UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA BARNEY,<br>Plaintiff,<br>v.<br>ANDREW SAUL, Commissioner of Social Security,<br>Defendant. | No. 2:20-cv-00254 AC<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1] For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment. The matter is remanded to the Commissioner for further proceedings consistent with this order.

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq*., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on June 21, 2017, alleging she became disabled on January 1, 1997. Administrative Record ("AR") 20, 158-63.[2] The applications were disapproved initially (AR 84-88), and on reconsideration (AR 93-97). On August 31, 2018 ALJ Matilda Surh presided over hearings on plaintiff's challenge to the disapprovals. AR 30-56 (transcript). Plaintiff was present and testified at the hearing. AR 32. She was represented by attorney "Mr. Carney" at the hearing. Id. Bernard Preston, a vocational expert, also testified at the hearing. AR 30.

On December 13, 2018, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 20-26 (decision), 27-29 (exhibits). On December 4, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on February 3, 2020. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF No. 16. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 11 (plaintiff's summary judgment motion), 14 (Commissioner's summary judgment motion), 15 (plaintiff's reply).

II. FACTUAL BACKGROUND

Plaintiff was born in 1961, and accordingly was 36 years old at the alleged onset date and 56 years old when she filed her application. AR 57. Plaintiff has an education through the 11th grade. AR 117.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

[2] The AR is electronically filed at ECF Nos. 10-3 to 13-8 (AR 1 to AR 310).

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since June 21, 2017, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following medically determinable impairments: post traumatic stress disorder, migraines, depression, history of open reduction internal fixation left ankle, hypertension, asthma (20 CFR 416.921 *et seq*.).
>
> 3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 *et seq*.).
>
> 4. The claimant has not been under a disability, as defined in the Social Security Act, since June 21, 2017, the date the application was filed (20 CFR 416.920(g)).

AR 22-26.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 26.

VI. ANALYSIS

Plaintiff alleges that the ALJ's conclusion at Step Two was not supported by substantial evidence because the ALJ failed to properly weigh the medical evidence. ECF No. 11 at 12-19. Specifically, plaintiff argues that her chronic pain from a fall and, most importantly, her mental health impairments of depression and post-traumatic stress disorder should have been found severe at Step Two. The argument regarding chronic pain is undeveloped beyond its mention and is therefore not considered. The court agrees, however, that the ALJ's conclusion at Step Two as to plaintiff's mental health impairments is unsupported by substantial evidence.

A. Review of Step Two Inquiry

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants

whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

At the second step, plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.

B. The ALJ Erred at Step Two Regarding Plaintiff's Mental Limitations

Because plaintiff alleged that she was disabled, at least in part, by mental impairments, the ALJ was required "to follow a special psychiatric review technique." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, "we must follow a special technique at each level in the administrative review process").

1. Special psychiatric review technique

a. Medically determinable impairment

First, under this technique, the ALJ must first determine whether plaintiff has "a medically determinable mental impairment(s)...." 20 C.F.R. § 404.1520a(b)(1). As to mental health

////

disorders, ALJ found that plaintiff's post-traumatic stress disorder ("PTSD") and depression were medically determinable. AR 22.

b. Rating the degree of functional limitation

Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four specific functional areas. 20 C.F.R. § 404.1520a(b)(2), (c). The ALJ must rate the degree of limitation in the first three areas—activities of daily living; social functioning; concentration, persistence, or pace—using "the following five-point scale: None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). The ALJ must rate the degree of limitation in the final area—episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more." The ALJ rated plaintiff's limitations as mild in all areas with no episodes of decompensation. AR 25.

c. Severity of functional limitation

Third, the ALJ must use the ratings to determine the severity of the mental impairment. If the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation is "none" in the fourth area, the impairment is "not severe," unless "the evidence otherwise indicates that there is more than a minimal limitation" in the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). However, if the ALJ finds that the functional limitation in even one of these areas is "extreme" (or finds four or more episodes of decompensation), then that rating "represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id. In other words, even though this technique is being applied at Step Two, a sufficiently severe rating—one that recognizes "extreme" limitations in even one functional area—will render the plaintiff disabled without any need to proceed through the rest of the sequential analysis. Id. The ALJ here, after concluding that plaintiff's limitations were "mild" ratings in the first three areas, and a "none" rating in the fourth—found that plaintiff's mental impairments were "nonsevere." AR 25-26.

2. Analysis

Plaintiff argues that the ALJ erred at the Second Step, and that in fact there is no substantial evidence to support the ratings of "mild" the ALJ assigned or the "nonsevere"

conclusion she reached. See ECF No. 14 at 26. Upon review, the court agrees with plaintiff.

First, the ALJ's determination that plaintiff had only mild limitations in the areas of understanding, remembering, or applying information is not supported by substantial evidence. The ALJ came to her conclusion by noting that although treating providers found plaintiff had poor memory, her memory seemed intact at her hearing and the record contained a general lack of evidence of ongoing limitations in this functional area. AR 25. In concluding that the record was largely devoid of evidence demonstrating plaintiff had deficits in his functional area, she ignored some significant evidence.

For example, clinic notes from June 8, 2015 state that plaintiff "has had a rough year. Recently got kicked out of her house. . . . Very pessimistic and poor insight. She was homeless for a couple of months there. I encouraged her to get a mental health eval to help her case for disability . . .she may have a significant psych dx that could help." AR 227. Poor judgment and insight were recorded upon examination. AR 278. At an April 2016 visit, plaintiff endorsed weakens/fatigue with depression, stating she was having difficulty "holding herself together." AR 282. Depression was also noted at a January 16, 2018 visit. AR 286.

The ALJ also ignored plaintiff's treatment with Matthew Narron, Psy.D., whose records contain ample evidence that plaintiff had more than mild limitation understanding, remembering, or applying information. AR 257. Plaintiff presented to Dr. Narron as "very scattered and non-linear" and reported that she had "major brain injuries," was homeless, and unable to support herself. AR 257. She had been raped and beaten and saw spirits. Id. Plaintiff felt that spirits were "drawn to her" and she needed to have her house blessed. Id. Her garbage man told her a spirit burned her house down. Id. She reported having attempted suicide after her brain injury in 1996. AR 258. Dr. Narron diagnosed her with post-traumatic stress disorder. AR 258.

On April 25, 2017, plaintiff told Dr. Narron she believed she would have "temporary amnesia" for the rest of her life secondary to a brain injury. AR 259. Dr. Narron noted that "clearly client is in survival mode and is in no space to do subtle psychological work, moved mode to resourcing and getting an idea of the services available to her. [C]lient currently has a disability attorney, though dealing with them and the court is difficult due to her injuries." AR

259. Dr. Narron diagnosed post-traumatic stress disorder. AR 258, 259. These instances alone call into question the ALJ's characterization of plaintiff's limitations in these areas as "mild," and at the very least demonstrate that this conclusion was not supported by substantial evidence. The ALJ did not mention these instances to explain how they fit in with her ultimate conclusion of mild limitation.

Second, the ALJ's conclusion that plaintiff had only mild limitations in the functional area of adapting or managing oneself is belied by her own reasoning. The ALJ noted that in January 2017, a medical note stated plaintiff was not on psychiatric medications, and she admitted she stopped going to psychotherapy. AR 25. The ALJ further reasoned that plaintiff "admitted she is capable of leaving going to public places, such as the grocery store" and that "[n]othing shows that the claimant has trouble understanding the difference between acceptable and unacceptable behavior or that the claimant does not understand the nature of hazards." Id. Finally, the ALJ found there were "no signs of decompensation or the need for inpatient psychiatric treatment, and no suggestion of the need for attention deficit-related medication." Id.

The evidence shows, however, that plaintiff stopped going to psychotherapy, and indeed continually missed medical and mental health treatment, *because* of her mental health issues as well as her poverty. On January 16, 2018, plaintiff reported difficulty following up with her psychologist because she skipped sessions due to transportation issues. AR 286. Indeed, she testified she was banned from therapy because she was routinely late due to her inability to remember appointments and arrange transportation. AR 44. On April 17, 2018, she endorsed depression and reported she was having a difficult time "holding herself together." AR 282. She reported that although she was temporarily banned from her psychiatrist she would like to talk with him again because it had helped in the past. Id. She noted that things were difficult given her homeless situation. AR 282. Plaintiff has also reported failure to complete blood work because she kept forgetting the appointments and kept forgetting to fast. Id.

It is well established that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." Orn, 495 F.3d at 638, quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff's lack of reliable transportation

causing her to discontinue treatment does not logically align with the conclusion that plaintiff discontinued treatment because she did not need it, and she cannot be penalized for failing to have the funds to secure reliable transportation. Further, the "Ninth Circuit has criticized the use of lack of treatment to reject mental health complaints, both because mental illness is under-reported and because it questionable to chastise a person with a mental impairment for exercising poor judgment related to his or her treatment." Shapiro v. Colvin, No. 2:13-CV-01688 APG PAL, 2015 WL 13738595, at *12 (D. Nev. June 22, 2015), report and recommendation adopted, No. 2:13-CV-1688-APG-PAL, 2015 WL 7871338 (D. Nev. Dec. 3, 2015), citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299–1300 (9th Cir. 1999).

Further, the ALJ's characterization of plaintiff's testimony is misleading. In fact, plaintiff testified she could "go shopping, but then I have to have someone help me" so that she can "remember what I'm doing." AR 42. She testified that when she shops, "I start to panic, and it's sometimes overwhelming. And sometimes I'll go shopping or I do try to go to get something and then I forget my wallet." AR 43. In light of plaintiff's recorded circumstances and this case law, substantial evidence cannot support the ALJ's conclusion that plaintiff has only mild limitations in the functional area is adapting or managing oneself.

C. This Matter is Remanded

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. Id. at 594.

Here, there are outstanding issues that must be resolved before a determination can be made. On remand, an ALJ shall recognize plaintiff's mental health impairments of depression

////

and post-traumatic stress disorder as severe at Step Two and proceed with the remainder of the sequential evaluation process.

VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 14), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: October 6, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE